IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KEVIN CHRISTIAN,

        Plaintiff,

v.                                                        CIVIL ACTION NO. 2:22-cv-567

EATON CORPORATION,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant Eaton Corporation ("Eaton" or "Defendant") filed a Motion for Judgment on the Pleadings ("MJOP") [ECF No. 10], as well as a Motion to Strike ("MTS") the First Amended Complaint brought by Plaintiff Kevin Christian ("Christian" or "Plaintiff") [ECF No. 20], both of which are pending before the undersigned in this matter pursuant to 28 U.S.C. § 636(c)(1). [ECF No. 8]. Christian served a timely response opposing the MJOP [ECF No. 16], followed by Eaton's timely reply [ECF No. 19]. Christian served a timely response opposing the MTS [ECF No. 21], but Eaton did not serve a reply or otherwise respond to the counterarguments in Plaintiff's response. Consequently, both of the pending motions are ripe for adjudication. For the reasons set forth herein, Eaton's motions are **GRANTED**, and this civil action is dismissed with prejudice.

I.      **BACKGROUND**

This civil action stems from Eaton's alleged termination of its former employee, Plaintiff Christian. Proceeding without counsel, Christian filed an initial Complaint in the Circuit Court of Kanawha County, West Virginia on November 9, 2022; therein he asserted claims for breach of contract, wrongful discharge, defamation, and intentional infliction of emotional distress against Defendant Eaton. [ECF No. 1-1 at 19-22]. As Eaton notes, Christian's twenty-five-page Complaint sets forth an extensive and "loquacious factual background," however as discussed *infra* these claims stem from a basic set of allegations. [ECF No. 11 at 2]. Christian alleges in support of his initial Complaint that on February 25, 2020, Eaton called him and laid him off effective February 28, 2020. *Id.* ¶ 20. Christian claims Eaton laid him off because of his religion after he refused to lie and break Eaton's Code of Ethics. *Id.* ¶¶ 42-43. After his termination, a dispute arose between the parties about Christian's retention of an Eaton laptop on the grounds that Eaton did not arrange a pickup. *Id.* ¶¶ 22-24. Christian claims that Eaton ultimately filed a police report asserting a claim of theft of the laptop, resulting in the appearance of law-enforcement officers at Christian's home to recover the laptop. *Id.* ¶¶ 25. On September 21, 2020, police allegedly informed him that Eaton had filed the police report. *Id.* ¶¶ 27-28.

On December 9, 2022—thirty days after Christian filed his initial Complaint—Defendant Eaton removed the action to this Court, asserting that there is subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.[1] [ECF No. 1]. Eaton then filed its Answer to the initial Complaint on December 16, 2022, denying liability and raising affirmative

---

[1] It is undisputed that Plaintiff and Defendant are citizens of different states.

defenses based upon the applicable statute-of-limitations over Christian's legal claims, as well as the defense that Eaton's "Code of Ethics is not a contract under applicable law and/or because no contract between the parties was breached."[2] *See* ECF 3 at p. 9. Following removal to federal court, this action was referred to the undersigned U.S. Magistrate Judge on March 21, 2023 by consent of the parties for all further proceedings pursuant to 28 U.S.C. § 636(c)(1). [ECF No. 8]. T

On March 24, 2023, Eaton filed its pending Motion for Judgment on the Pleadings ("MJOP"). [ECF No. 10]. Eaton argued Christian's breach-of-contract claim fails because no contract existed between the parties. [ECF No. 11 at 6]. Eaton then argued West Virginia's applicable statutes of limitations barred Christian's remaining claims of defamation (one year), wrongful-termination (two years) and intentional infliction of emotional distress (two years). *Id.* at 4-8.

On April 6, 2023, Christian filed a response brief opposing Eaton's MJOP. [ECF No. 16]. Christian argues that the applicable statutes of limitations should be tolled pursuant either to equitable estoppel or the discovery rule. *Id.* at 1-2. As to the former, Christian argued that the applicable statutes should be tolled because he reasonably relied on Eaton's alleged promises to adjudicate and correct the police complaint. *Id.* As to the latter, Christian argues that he did not gain sufficient knowledge of his injuries until his final conference with Eaton "sometime in March 2022," and discovery should be permitted. *Id.* However, Christian did partially relent to Eaton's argument and agreed to drop his claims for breach of contract and wrongful termination. *Id.* at 3, 6.

---

[2] Christian references the Code of Ethics throughout the Complaint and it is integral to and relied on in the Complaint. Thus, it can be considered part of Eaton's Motion for Judgment on the Pleadings without converting it to a Motion for Summary Judgment. *See Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004).

The same day Christian filed his response brief in opposition to the MJOP, he also served the operative First Amended Complaint ("FAC"). [ECF No. 17]. Christian's FAC alleges that he accepted an employment offer to work as a project manager and engineer for Eaton[3] in March 2010. During Christian's employment with Eaton, the company allegedly promoted to all employees its corporate culture as an organization with ethical standards "at the highest level." *Id.* at 3. Eaton allegedly touted its commitment to ethical standards to employees, highlighting its establishment of a "Global Ethics and Compliance Office" to administer the Code and address violations. *Id.* Additionally, in the Ethics Guide Eaton provided to employees, the company represented that anyone found to have violated the Code could face discipline, termination, civil liability, or criminal prosecution. *Id.* at 3. Further, Christian alleges that Eaton required employees to affirm the Code annually, and held an annual presentation with employees to reinforce the company's "commitment to enforcing the Code." *Id.* at 4. During these presentations, Eaton allegedly featured actual incidents of employees and managers found to have violated the Code, and emphasized its efforts to investigate and address the violations. *Id.* at 4. According to Christian, these annual practices "re-enforced" his "reasonable reliance" on Eaton to "honor[] its ethical promises." *Id.* at 2.

At an unspecified time between December 2012 and February 2020, Christian asserts that he "was initially deceived, and later pressured" by other employees—who allegedly had "actual or apparent authority" over him—"into selling life-safety products known to be faulty" by Eaton. *Id.* at 5. Based upon his belief that these employees' sale of the allegedly faulty life-safety products violated the Code, Christian asserts that he

---

[3] Plaintiff Christian alleged that he was hired by Eaton's predecessor entity, which was succeeded by Eaton in 2012. Because the transition in ownership is not relevant to determination of the pending motions *sub judice*, both entities are referred to herein together as "Eaton."

made "formal complaints" to Eaton regarding the other employees' promotion and sale of the life-safety products and his belief that their conduct violated the Code. *Id.* Plaintiff Christian alleges, however, that despite Eaton's stated dedication to "the highest level" of ethical standards, the company's Global Ethics and Compliance Office did not address his formal complaints—and in fact "did nothing . . . to remedy the injury in contempt of their promise to do so." *Id.* at 4-5. Christian also alleges that during his last week of employment with Eaton, he claimed to Eaton that there were "multiple ethical violations" within his assigned business unit. *Id.* at 5-6. Christian alleges "no direct knowledge" of the outcome, but asserts "that the faulty product that he reported has been discontinued." *Id.* at 6. According to Christian, these events "lead directly to a significant underperformance of Eaton's product sales." *Id.* at 5.

On or about February 25, 2020, Eaton terminated Christian's employment and attended a termination meeting with Eaton via conference call. *Id.* at 5-6. During this meeting, Eaton allegedly promised they would be sending a "FedEx account number" so Christian could return his company laptop. *Id.* at 5, 7. Additionally, during the termination meeting Eaton allegedly informed Christian of three reasons for its decision to terminate his employment after a decade of working for the company: (1) changes in its staffing needs due to the decline in product sales, (2) Plaintiff's practice of working remotely, and (3) his status as "one of the higher paid guys." *Id.* at 5. The termination allegedly occurred "mere days before the Covid pandemic, stripping [Christian] of income and critical health benefits." *Id.*

Allegedly, despite promising to arrange for the return of the laptop during the termination meeting, Eaton never sent the instructions to Christian after his termination. *Id.* at 6-7. Christian asserts that he informed the company in writing on March 8, 2020,

5

stating that he would be happy to relinquish the laptop "if only Eaton arranged a pickup." *Id.* at 7. Christian alleges that Eaton never responded. *Id.* Christian alleges that Eaton then knowingly and intentionally submitted a false criminal complaint to the West Virginia State Police, by calling to report that Christian stole the company laptop. *Id.* at 6. Christian asserts that he sought an "administrative solution" to the false police report beginning on March 16, 2021, when he filed another ethical complaint with Eaton's Global Ethics and Compliance office. *Id.* at 7. According to Plaintiff, "each time that Plaintiff checked on the status of remedy, Eaton claimed it was all a misunderstanding," and "kept assuring the Plaintiff administrative relief, while never delivering it." *Id.* Plaintiff asserts there was ultimately no delivery on Eaton's promise to investigate, to determine if the police report was properly filed against him, or to correct the complaint if Eaton had made a mistake. *Id.*

Christian alleges the criminal complaint "is still accusing the Plaintiff to this very day, causing on-going harm." *Id.* He concludes that "the insidious nature of Eaton's actions deeply affected his mental health, causing significant suffering[.]" *Id.* at 8. Based upon these allegations, Christian's FAC asserts three legal claims against Eaton: (1) promissory estoppel, (2) defamation *per se*; and (3) intentional infliction of emotional distress. Christian's prayer for relief in the FAC seeks "general damages . . . special damages . . . compensatory damages . . . [and] punitive damages," as well as "[i]njunctive relief to remove the criminal complaint[.]" *Id.* at 8-9.

Thereafter on April 12, 2023, Eaton filed its pending Motion to Strike the FAC ("MTS"). [ECF No. 20]. In support of its motion, Eaton argued that Christian's amended pleading should be struck as untimely and improper pursuant to Rule 15 of the Federal Rules of Civil Procedure, because the amendment would cause Eaton undue prejudice

6

and subvert judicial economy in light of the parties' full briefing on Eaton's MJOP. *Id*. at 3. In response, Christian argued that Rule 15 permitted him to amend under the circumstances and that Eaton would not suffer prejudice due to the procedural posture of the action. [ECF No. 21].

## II. LEGAL STANDARDS

### A. Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Rule 12(c) motions are subject to the same standard as motions to dismiss under Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). A motion filed under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

To demonstrate legal sufficiency, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the U.S. Supreme Court explained, this means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added)). To achieve facial plausibility, a plaintiff must assert sufficient allegations of fact from which a district court may draw the reasonable inference that the defendant is liable; stated another way, the allegations must move a plaintiff's claim beyond the realm of mere possibility or speculation. *Iqbal*, 556 U.S. at 678. This does not necessarily require "detailed factual allegations," but they must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. A district court must accept as true all factual allegations contained in a complaint; however,

bare "labels and conclusions" or "formulaic recitation of the elements of a cause of action" are facially deficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), a district court may not consider "matters outside the pleadings." Fed. R. Civ. P. 12(d). However, the court is generally permitted to take judicial notice of matters of public record. *Brown v. Cabell Cty. Bd. of Educ.*, 3:09-cv-0279, 2009 WL 1470471, at *2 (S.D. W. Va. May 22, 2009) (citing *Sec'y of State of Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). Likewise, the court may consider "documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). In the event of conflict between the allegations of the complaint and any attached or incorporated exhibit, "the district court should consider the nature of the document and why the plaintiff attached it." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations is proper." *Id*. "But in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id*.

In evaluating a motion pursuant to the applicable Rule 12(b)(6) standard, a district court may not consider "matters outside the pleadings." Fed. R. Civ. P. 12(d). However, the court is generally permitted to take judicial notice of matters of public record. *Brown v. Cabell Cty. Bd. of Educ.*, 3:09-cv-0279, 2009 WL 1470471, at *2 (S.D. W. Va. May 22, 2009) (citing *Sec'y of State of Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705

8

(4th Cir. 2007)). Likewise, a district court may consider "documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). In the event of conflict between the allegations of the complaint and any attached or incorporated exhibit, "the district court should consider the nature of the document and why the plaintiff attached it." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations is proper." *Id*. "But in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id*.

Finally, where—as in the matter *sub judice*—plaintiff is proceeding without counsel, "(a) document filed pro se is to be liberally construed(.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This requirement of liberal construction does not mean, however, that a district court may ignore a clear failure in the pleading to allege sufficient facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

    B.    **<u>Motions to Strike</u>**

A motion to strike is governed by Rule 12(f) of the Federal Rules of Civil Procedure, which allows a federal district court—acting either *sua sponte* or by motion—to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Technically, motions to strike are not proper

methods of disposing of part or all of a complaint. *United States v. Taylor*, 909 F. Supp. 355, 359 (M.D.N.C. 1995) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (2d ed.1990)). However, to avoid being restricted by the technical form of common-law practice, which the federal rules have abandoned, courts may treat motions to strike as motions to dismiss. *See id.*

In the context of a motion to strike an amended pleading under the circumstances, Rule 15 of the Federal Rules of Civil Procedure governs the propriety of amendment. First, a party may amend its pleading once as a matter of course, so long as the filing of the amendment occurs no later than 21 days after serving the original Complaint, or 21 days after service of Defendant's Answer or of a Rule 12(b), (e), or (f) motion, whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading only with the opposing party's written consent or the Court's leave; the Rule provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

A district court may properly deny a motion to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (alteration, citations, and internal quotation marks omitted). "A proposed amendment is futile when it is clearly insufficient or frivolous on its face," or "if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (citation and internal quotation marks omitted). When assessing whether a proposed amendment would be futile, courts apply the same standard to test the legal sufficiency of the complaint applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim—whether, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff, the complaint

states a facially-plausible claim to relief. *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014).

## III. DISCUSSION

Because Eaton's motions concern the same central issues, they are taken up together herein. First, Eaton's MTS demonstrates that Christian's amended pleading must be denied as futile. The text of Rule 12(f) authorizes the Court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Lab'y Corp. of Am. v. ASL-DEN, LLC*, 5:22-cv-437, 2023 WL 5515732, at *1 (E.D.N.C. Aug. 25, 2023] (citing Fed. R. Civ. P. 12(f)). Motions to strike are disfavored, and courts are "very reluctant to determine disputed or substantial issues of law on a motion to strike." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F.Supp.2d 434, 437 (S.D.N.Y.2005) ["*MTBE Prods. Liab. Litig.*"]. Consequently, a matter will not be stricken unless it clearly has "no possible bearing upon the subject matter of the litigation." 2A Moore's Federal Practice ¶ 12.21 at p. 2429 (1983). *See also CTH 1 Caregiver v. Owens*, 8:11-cv-2215, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012) (citing *Skadegaard v. Farrell*, 578 F. Supp. 1209, 1221 (D.N.J. 1984) (distinguished on other grounds).

Here, the allegations in Christian's FAC do not on their face fit within any of those categories; instead, the crux of Eaton's MTS appears to seek dismissal of the FAC in its entirety. [*See* ECF No. 20 at 2]. Motions to dismiss "veiled in the form of a motion to strike" are disfavored as an improper way "to procure the dismissal of all or a part of a complaint." *United States v. Taylor*, 909 F. Supp. 355, 359 (M.D.N.C. 1995) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380, at 644 (1990); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 358 (4th Cir. 2001)

11

(explaining that Rule 12(f) motions to strike are generally disfavored in the Fourth Circuit). However, a federal district court may elect to construe an improperly-designated motion as a motion to dismiss. *Taylor*, 909 F. Supp. at 359. The Court therefore construes Defendant's MTS as a motion to dismiss Christian's FAC.

Based upon the allegations set forth in Christian's FAC, Eaton's challenges to the amended pleading as futile and prejudicial under Rule 15(a)(1)-(2) have merit. *Id.* Rule 15 of the Federal Rules of Civil Procedure governs a party's amendment of pleadings. Rule 15(a)(1) permits amendment once as a matter of course, provided that amendment occurs no later than 21 days after serving the original Complaint, or 21 days after service of Defendant's Answer or of a Rule 12(b), (e), or (f) motion, whichever is earlier. Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2) permits amendment at any time, but only with the Court's leave, or the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). The Rule expressly states that "[t]he court should freely give leave when justice so requires." *Id.*

Here, the parties did not dispute that the time for amendment as a matter of course under Rule 15(a)(1) had already passed at the time Christian filed the FAC. [ECF Nos. 20 at 2; 21 at 2]. In its first challenge, however, Eaton argues that Christian's FAC was not properly filed under Rule 15(a)(2) because Christian did not seek leave of court to amend, and did not obtain Eaton's written consent. Christian argues in response that he was permitted to amend under 15(a)(2) because Eaton *did* provide its written consent. Christian points to the parties' March 21, 2023 Rule 26(f) Report, in which they jointly submitted a proposed case schedule for the Court's consideration. [ECF No. 8 at 1]. Therein, they suggested to the Court that Plaintiff's deadline to amend the pleadings occur on May 6, 2023. *Id.* The 26(f) Report is signed electronically both by Plaintiff and Eaton's counsel. *Id.* at 6. Christian concludes that, because he filed the FAC on April 6, 2023—one

month before the agreed deadline for Plaintiff to amend—his filing was proper. Eaton argued that its written agreement to the May 6 amendment deadline did not constitute "written consent" to amend under Rule 15(a)(2), because the Court's Local Rules state that a Rule 26(f) Report is "advisory only," and at the time the Court had not issued a scheduling order and thus had not adopted the suggested case schedule. Defendant reasons that, since the First Amended Complaint was filed in contradiction of Rule 15, it is unauthorized, and the Court should strike it from the docket.

Eaton's interpretation of the Court's Local Rule as "advisory" to the parties is erroneous. Rule 16.1(c) of the Court's Local Rules states that "[t]he parties' report on their meeting shall be considered *by the judicial officer* as advisory only." *See* LR. Civ. P. 16.1(c) (emphasis added). The text of the Local Rule clearly states that the Court—not the parties—may consider the 26(f) report as "advisory only." As Christian explained, Eaton does not dispute that it jointly filed the Rule 26(f) report, agreeing in writing, under the signature of its counsel, that Plaintiff could amend the pleadings until May 6, 2023. [ECF No. 21 at 2]. The Court will hold Eaton to its written representations and agreements in this action, and finds that Christian's FAC was properly filed pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

Eaton's next challenge to the FAC asserts that permitting Christian's amendment would result in undue delay and unfair prejudice to Eaton. In response, Christian minimizes Eaton's emphasis on delay, pointing to the early procedural posture of this action. [ECF No. 21 at 2]. As Christian noted, in the Fourth Circuit delay alone is generally an insufficient reason to deny a motion to amend a complaint under the liberal standard of Rule 15(a)(2), unless the delay is accompanied by prejudice, bad faith, or futility. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503 (4th Cir. 1986). In turn, "it is difficult to

13

sustain a claim of prejudice when trial is not imminent and discovery has not ended." *Id.; see also Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274 (4th Cir.1987); *Mason v. Walmart Stores, Inc.*, 5:23-CV-226-D, 2024 WL 497137, at *2 (E.D.N.C. Feb. 8, 2024). The Court finds some merit to Christian's response. The early procedural posture of the case—prior to entry of a scheduling order—along with the liberal standard afforded to documents filed by pro-se parties, *see Erickson*, 551 U.S. at 94, these factors standing alone do not unfairly prejudice Eaton or cause undue delay.

However, Eaton stands on firmer ground in arguing that granting Plaintiff leave to amend would cut against judicial economy, would have a prejudicial effect on the Defendant, and would be futile. As Eaton explains, the parties fully briefed the issues raised in Eaton's Rule 12(c) motion with respect to the *original* Complaint. [ECF No. 20 at 3]. Defendant claims that reasserting these challenges with respect to the amended pleading would "force[] Eaton to relitigate the same issues currently ripe before this Court." [ECF No. 20 at 3]. This is particularly so because the FAC re-asserted Christian's previous claims for defamation and intentional infliction of emotional distress, both of which Eaton already addressed in its 12(c) motion. Finally, the Court agrees with Eaton that amendment would be futile, for the same reasons that Eaton's MJOP prevails.

Christian's tort claims for defamation and intentional infliction of emotional distress ("IIED") in the FAC are futile because they share the same deficiencies reasons raised by Eaton in its MJOP. From the face of the original Complaint and the FAC, Christian's defamation claim is barred by West Virginia's well-established one-year statute of limitations for defamation claims. *Richards v. Walker*, 813 S.E.2d 923 (W. Va. 2018); *Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 795 S.E.2d 530 (W. Va. 2016). The statute begins to accrue when a plaintiff either knows, or should know, of the

14

defamatory action. *Nutter*, 795 S.E.2d at 546; *Richards*, 813 S.E.2d at 929. In his original Complaint, Christian asserted that on August 14, 2020, the West Virginia State Police contacted him at home and informed him that a criminal complaint had been filed against him for property theft. [ECF No. 1-1 at 17]. Christian alleges that on September 21, 2020, he requested a copy of the Police report to confirm that Eaton was the entity responsible for contacting the police to report the alleged theft. *Id.* According to Christian, the West Virginia State Police would not release the report itself in light of the "prosecution pending," but did identify Eaton as the entity who reported property theft based upon Christian's alleged retention of the company's laptop. Based upon these allegations, the statute of limitations began to accrue on that date, and expired on September 21, 2021. As Christian did not initiate the instant civil action until more than a year later on November 4, 2022, it is clear from the face of the Complaint that Plaintiff's defamation claim is time-barred pursuant to West Virginia Code § 55-2-12(c).

The parties do not dispute that the one-year statute-of-limitations set forth in § 55-2-12(c) governs Christian's defamation claim under § 55-2-12(c), and the statute governing his IIED claim likewise set forth a one-year limitation. Christian argues, however, that the statute should be tolled because he did not gain sufficient knowledge of the injury until his final conference with Eaton as part of his effort to resolve the parties' dispute over the laptop privately through the company's Global Ethics and Compliance Office, which he asserts occurred sometime in March 2022.[4] [ECF No. 16 at 4]. Christian concludes that "[d]iscovery will be required to firmly establish that date." *Id.* This argument is meritless because it sidesteps Christian's clear allegations in the

---

[4] The original Complaint did not allege the date of his "final conference" with Eaton.

15

original Complaint that he learned of Eaton's defamatory act—reporting Christian's alleged theft to police—on September 21st 2020, when Christian confirmed with police that Eaton was the entity responsible for reporting his alleged theft. *Id.* Similarly, based upon the detailed allegations in the original Complaint, Eaton's infliction of emotional distress occurred on August 14, 2020, when police questioned Christian about the laptop at his home. [ECF No. 1-1 at 17]. Describing the effect of his interaction with police, Christian alleges that he was devastated by the "ordeal," and was "unable to cope with daily activities due to the emotional trauma of the armed encounter." [ECF No. 1-1 at 17]. Christian further alleges that the Covid-19 lockdown at the time, "coupled with the emotional trauma inflicted upon Mr. Christian by Eaton made it very difficult for him to discover and prove who had filed a false Police report against him," but that he was able to confirm with police on September 21, 2020, that Eaton made the report of theft to police. *Id.*

The one-year statute of limitations begins to accrue as soon as a plaintiff "knows or should know of the defamatory action and elements of his claims." *See Richards v. Walker*, 813 S.E.2d 929 (W. Va. 2018); *Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 795 S.E.2d 546 (W. Va. 2016); Syl. Pt. 4, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). Based upon the plain language of the Complaint, Christian thus knew of the facts giving rise to his tort claims on September 21, 2020. Similarly, Christian's FAC alleges that "[i]n or around August 2020, Eaton allegedly called the police and reported the laptop stolen," and that "Plaintiff *immediately* and diligently sought evidence of the police report;" however, he alleges that he did not act on this knowledge until he sought "administrative relief" privately with Eaton "beginning on March 16, 2021." [ECF No. 17 at 7]. As Christian's tort claims each stem from his encounter with police brought about

16

when he learned of Eaton's police report on September 21, 2020, the statutes of limitations begin to run as soon as he learned who filed the police report. *See* Syl. Pt. 3, *Evans v. United Bank, Inc.*, 775 S.E.2d 500 (W. Va. 2015). Thus, because Christian learned of Eaton's role in the police report on September 21, 2020, the statutes of limitations began to accrue on that date, and Christian's tort claims are thus time-barred. *See* Syl. Pt. 3, *Evans v. United Bank, Inc.*, 775 S.E.2d 500 (W. Va. 2015).

Lastly, Christian appears to imply that he is still suffering a continuous injury and therefore his statute of limitations has not accrued pursuant to the continuous-tort doctrine. This argument also fails as a matter of law. West Virginia courts have determined that where a claim arises out of a single incident with no other affirmative wrongful acts, the continuing harm of that single act does not establish a continuous tort. *Richards v. Walker*, 813 S.E.2d 923, 930 (W. Va. 2018); *see also*, *Roberts v. W. Va. Am. Water Co.*, 655 S.E.2d 119 (W. Va. 2007); *A Society Without a Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011) (finding continual unlawful acts are distinguishable from continuing ill effects of an original violation because the latter do not constitute a continuing violation). While Christian alleges that Eaton failed to cooperate with private resolution of the laptop dispute, his allegations clearly attribute his damages to the police report itself. Christian does not allege Eaton filed any additional reports or undertook any affirmative actions after allegedly filing the police report. Thus, the continuous tort doctrine does not apply, and Christian's tort claims are each time-barred, rendering those claims in the FAC futile.

Christian's third and final cause of action in the FAC is a promissory/equitable estoppel claim, which he amended to replace his withdrawn breach-of-contract claim. However, this claim is also futile because it fails on the same ground raised in Eaton's MJOP in relation to the

17

breach-of-contract claim, and as conceded by Christian. West Virginia recognizes—and the parties do not dispute—the presumption that employees are at-will. *Williamson v. Sharvest Mgmt. Co.*, 415 S.E.2d 271, 273 (W. Va. 1992). Eaton explained in its MJOP that, while representations in a handbook or policy can create an implied contract, any representations or promises that allegedly alter the presumptive at-will employment relationship "must be *very definite* to be enforceable." [ECF No. 11 at 4 (citing *Younker v. E. Associated Coal Corp.*, 591 S.E.2d 254, 258 (W. Va. 2003)].

Similarly, while employers may be bound by promises that they make to their employees in certain circumstances, those promises must be express and specific. *Tiernan v. Charleston Area Med. Ctr., Inc.*, 575 S.E.2d 618, 624-625 (W. Va. 2002). To state a plausible claim for promissory estoppel against an employer, the employee must plausibly allege that (1) the employer made an "express" promise; (2) the employer either intended or reasonably should have expected an employee like Christian to rely and/or act upon the employer's express promise; (3) the employee's reliance on the employer's promise was reasonable; and (4) that the employee's reliance led to his discharge. *Id.*

On review, the allegations in Christian's FAC are facially insufficient to state a plausible claim for relief because he does not allege facts from which an inference could reasonably drawn that Eaton's alleged promise was definite or express. Christian's allegations merely demonstrate Eaton's promotion of ethical conduct among its employees rather than an express or definite promise to alter the at-will employment relationship. Additionally, Christian's allegations do not plausibly assert that Eaton intended, or reasonably should have expected, an employee like Christian to rely and/or act upon the Code. The Supreme Court of Appeals of West Virginia explained the well-

18

established rule that such codes of conduct "embodied only aspirational goals," and that to hold otherwise would contravene public policy by discouraging companies from promoting ethical standards. *Younker*, 591 S.E.2d at 258. Without more, the allegations in Christian's FAC merely give rise to an inference that Eaton's Code, just as in *Younker*, promoted ethical conduct among Eaton employees. Consequently, Christian's amendment of his withdrawn breach-of-contract claim in the FAC to a promissory-estoppel claim is futile, and Eaton's MTS must therefore be granted. Finally, because Christian expressly withdrew his claims for breach of contract and wrongful termination in response to Eaton's MJOP, and did not reassert them in the FAC, judgment on the pleadings is proper and Eaton's motion must be granted. [ECF No. 16 at 3-4, 6].

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Eaton Corporation's Motion for Judgment on the Pleadings [ECF No. 10] and Motion to Strike Plaintiff's First Amended Complaint [ECF No. 20] are **GRANTED**, and this matter is hereby **DISMISSED** with prejudice as set forth in the Court's contemporaneously-filed Order of Dismissal.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to transmit a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 29, 2024

Dwane L. Tinsley
United States Magistrate Judge